UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

FELIPE MANZANARES,

                         Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

-----------------------------------------------------------------X

22-CV-01898 (SN)

**OPINION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/5/2023

**SARAH NETBURN, United States Magistrate Judge:**

Felipe Manzanares seeks judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. See 42 U.S.C. § 405(g). Manzanares moved, and the Commissioner cross-moved, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner's motion is GRANTED, and Manzanares's motion is DENIED.

**BACKGROUND**

**I.    Administrative History**

Manzanares applied for DIB on October 7, 2020. ECF No. 10, Administrative Record ("R.") 56. He alleged that he was disabled beginning July 6, 2006, due to back, neck, and ankle injuries. R. 180. His application was first denied on March 9, 2021, and then again upon reconsideration on April 12, 2021. R. 75, 88. Manzanares then requested a hearing before an administrative law judge ("ALJ") to review his case. R. 101. Manzanares appeared before ALJ Robert Gonzalez for a hearing on September 30, 2021. R. 11, 118. The ALJ issued a decision

denying the claim on October 27, 2021. R. 7. On January 7, 2022, the Appeals Council denied Manzanares's request for review, making the ALJ's decision final. R. 1.

## II.     Manzanares's Civil Case

Manzanares filed his complaint on March 05, 2022, seeking review of the ALJ's decision. See ECF No. 1. He requests that the Court vacate the decision and award him benefits or, in the alternative, remand the case for further proceedings. ECF No. 18, Plaintiff's Memorandum of Law ("Pl. Br.") at 18. The Commissioner answered by filing the administrative record, and the parties cross-moved for judgment on the pleadings. See ECF Nos. 10, 17, 19. Manzanares argues that the ALJ erred by improperly evaluating the medical opinion of treating physician Dr. Debiec when determining his Residual Functional Capacity ("RFC"), and improperly discredited Manzanares's testimony concerning the intensity, persistence, and limiting effects of his symptoms. Pl. Br. at 7, 14. The Commissioner responds that the ALJ's RFC determination was free from error and supported by substantial evidence, and that he properly evaluated Manzanares's testimony. See ECF No. 20. Defendant's Memorandum of Law ("Def. Br.") at 13, 20.

On June 7, 2022, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 9.

## III.    Factual Background

Manzanares was born on May 7, 1963, and was 43 years old at the time of the alleged onset of his disability in 2006. R. 152. He has a high school education and worked as a police officer from 1986 to 2006. R. 36-37. In 1992 he injured his back while lifting weights and was hospitalized for five days. R. 38. Manzanares testified that while his "body was never the same because of that injury" and he continued to be in severe pain, he did not tell anyone about his

symptoms at the time. Id. In 2001, he inquired about early retirement and was eventually reassigned to an ostensibly less physically demanding position. Id. Manzanares's symptoms persisted, and he retired in 2006. R. 39. In 2007, he injured his ankle while playing tennis, and in 2020, he fell down a flight of stairs. R. 39-40.

On November 30, 2007, an MRI of the lumbar spine showed "anterior disc extension and anterior spurring" at L5-S1, diminished disc space height at L5-S1, L4-L5, and L3-L4, and posterior disc herniation at L4-L5 and L3-L4. R. 803-04. These findings were "compatible with inflammatory/noninfectious posterior paraspinal fasciitis." R. 804.

The administrative record contains very little information from the relevant period between the alleged onset date ("AOD") of his disability on July 6, 2006, and December 31, 2013 (the date last insured or "DLI"). Per Manzanares's counsel, he received outpatient treatment for his back and neck during that time at Montefiore Hospital in the Bronx, but any records "have aged out and so they were unavailable." R. 42.

On February 4, 2019, a second MRI of the lumbar spine showed "grade 1 anterolisthesis with marked central canal and bilateral foraminal stenosis, disc bulge and a posterior central disc herniation component, and marked facet hypertrophy" at L4-L5, "disc bulge with bilateral foraminal extension narrowing and a posterior central disc herniation component unchanged" at L3-L4, and posterior central disc bulges at L2-L3 and L5-S1. R. 312-13.

On February 14, 2019, Manzanares was evaluated by Dr. Jozef M. Debiec at NY Pain and Spine. R. 345. Manzanares reported pain "located in the lower back and leg and neck and right arm" that "first began several months ago." Id. Dr. Debiec diagnosed cervical radiculopathy, lumbar pain, lumbar radiculopathy, and herniated lumbar disc. On March 8, 2019,

3

Dr. Debiec administered an epidural steroid injection at L5-S1. R. 343-44. Manzanares continued to be treated by Dr. Debiec through April 2021. R. 330-47, 424-26.

In a report dated May 2, 2021, Dr. Debiec opined on Manzanares's ability to complete work-related activities. R. 380-81. Dr. Debiec described limitations—that were significantly more severe than those identified by the ALJ—amounting to sedentary work. Id. When asked to specify the medical findings that supported the reported limitations, Dr. Debiec wrote "MRI findings / physical exam." Id.

Manzanares's arguments on appeal are limited to the ALJ's weighing of the opinion evidence of Dr. Debiec and Manzanares's own testimony. Accordingly, a more detailed summation of the medical record evidence is unwarranted, and the Court adopts the parties' recitations of Manzanares's medical record evidence. See Pl. Br. at 2-6, Def. Br. at 6-10.

## IV. The ALJ's Decision

The ALJ found that Manzanares last met the insured status requirements of the Social Security Act on December 31, 2013 (the "DLI"). R. 12. At step one, the ALJ determined that Manzanares had not engaged in any substantial gainful activity between the AOD of July 6, 2006, and the DLI. R. 13.

At step two, the ALJ found that Manzanares had the following severe impairments during the relevant period between the AOD and DLI: "degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral knees, obesity, pernicious anemia, carpal tunnel syndrome, hyperlipidemia, hypertension, asthma, and rhinitis." Id. The ALJ also found medically determinable impairments of neuropathy, hypothyroidism, and an ankle injury, but ultimately determined that these were non-severe. R. 13-14.

At step three, the ALJ determined that Manzanares's impairments or any combination thereof did not meet or medically equal the severity of a listed impairment in the applicable regulations ("listings"). R. 14; see 20 C.F.R. Pts. 404.1520(d), 404.1525, 404.1526.

Specifically, the ALJ found the requirements of listings 1.15, 1.16, 1.18, 11.01, 3.02, 3.03, 7.05[1] were not met or medically equaled. R. 14-16. In making this determination, the ALJ also considered Manzanares's obesity and hypertension. R. 15-16.

The ALJ established Manzanares's RFC. R. 16. He found that Manzanares possessed the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), with the additional limitations that he cannot kneel or crawl and "can only occasionally stoop, crouch, or climb ramps and stairs, and that he can only frequently handle and finger, bilaterally and frequently flex, extend, and rotate the neck." Id. Finally, the ALJ noted that Manzanares's RFC included a need to avoid concentrated exposure to dust, fumes, and noxious gases. Id. At step four, the ALJ found that Manzanares had past relevant work as a police officer, "which is considered medium, skilled work (SVP 6) per the DOT but performed by the claimant at the heavy position," and as an investigator, which is considered light work. R. 22. The ALJ found that the demands of these roles exceeded Manzanares's RFC. Id.

At step five, the ALJ concluded that, through the DLI, there were jobs existing in significant numbers in the national economy that Manzanares could perform. Id. In reaching this conclusion, the ALJ relied upon the testimony of a vocational expert, who opined that an individual with Manzanares's RFC would be able to work as an Assembler Small Products I, a

---

[1] Respectively: "disorder of the skeletal spine resulting in compromise of the nerve root," "lumbar spinal stenosis resulting in compromise of the cauda equina," "abnormality of a major joint in any extremity," "neurological disorders," "chronic respiratory disorders," "asthma," and "hemolytic anemias."

Marker II or Labeler, or a ticket taker, with 17,000, 9,900, and 5,400 jobs existing in the national economy, respectively. R. 49-53.

Because the ALJ found Manzanares was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, he concluded that Manzanares was not disabled through the DLI. R. 23.

## DISCUSSION

### I. Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside only if it is based upon legal error, or it is not supported by substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cr. 1998)).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). Therefore, if substantial evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject

those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>.") (emphasis in original) (citations and internal quotation marks omitted). Although deferential to an ALJ's findings, a disability determination must be reversed or remanded if it contains legal error or is not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

## II.     Definition of Disability

A claimant is disabled under the Act if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). A claimant will be found to be disabled only if their "impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. § 423(d)(2)(A).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 404.1520. The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. See id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1

> . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof as to steps one, two, three, and four; the Commissioner bears the burden as to step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

## III. Analysis

Manzanares argues that the ALJ's RFC determination was improper in two ways. First, Manzanares asserts that the ALJ erred by affording too little weight to the opinion of Dr. Debiec when he found it "less than persuasive." Pl. Br. at 9. Manzanares also argues that the ALJ erred by improperly discredited his hearing testimony regarding the intensity, persistence, and limiting effects of his symptoms. Pl. Br. at 15.

### A. The ALJ's RFC Determination

#### 1. Medical Opinion Evidence

Because Plaintiff's DIB application was filed after March 27, 2017, revised regulations guided the ALJ's analysis. See 20 C.F.R. § 404.1520c. When considering medical opinions and prior administrative medical findings under these new regulations, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight" to any of those opinions.[2] Id. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of an opinion provided by medical sources based on the opinion's "supportability," its "consistency," the

---

[2] The new regulations also differ from the previous rules in that the definition of "acceptable medical sources" is expanded. 20 C.F.R. § 404.1502(a).

8

"relationship" of the medical source and the claimant, the source's "specialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." Id. § 404.1520c(1)-(5).

The most important factors are supportability and consistency; "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support" their opinion, and the more consistent a medical opinion or prior administrative medical finding is with "the evidence from other medical sources and nonmedical sources" in the claim, the more persuasive the opinion or finding. Id. § 404.1520c(b)(2), (c)(1), (c)(2). The ALJ must address how they considered the supportability and consistency factors but need not discuss the other three. Id. § 404.1520c(b)(2).

The ALJ considered the supportability and consistency of the opinion when affording low weight to Dr. Debiec's assessment of Plaintiff's ability to work. The ALJ noted that Dr. Debiec's opinion failed to cite any specific observations from his treatment of Manzanares as "supporting explanations" of the limitations claimed. R. 21. The ALJ also looked to the record evidence and observed that while "abnormalities [were] reflected via diagnostic testing and physical exams," there was little support for such a restrictive RFC in light of the conservative treatment and generally normal physical exams reported during the relevant period. Id. Perhaps most importantly, the ALJ noted that Dr. Debiec did not begin treating Manzanares until more than four years after the DLI, id., and Dr. Debiec's opinion does not purport to be retrospective. R. 380-81.

Manzanares contends that Dr. Debiec based his opinion "primarily on MRI findings," and that Dr. Debiec compared Manzanares's 2019 and 2007 MRIs of the lumbar spine. Pl. Br. at 10. He then reasons that, because these two sets of imaging "document nearly identical findings . . . .

9

it is apparent that the opinions . . . are retrospective in nature." Id. This line of reasoning fails for two reasons. First, Dr. Debiec's opinion does not specify which MRI results were consulted, and may very well have been predicated entirely on the more recent set. Second, even if Dr. Debiec had consulted two sets of imaging that were indeed identical, it is well within the realm of possibility that other factors, including that Manzanares has aged over a decade, would impact his ability to work. This would not necessarily be reflected in imaging, but presumably would be in a physical exam.

Plaintiff bears the burden of proving that a more restrictive RFC is appropriate. Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018). Although Manzanares contends that, before the DLI, he was incapable of performing light work with the additional limitations identified by the ALJ, he fails to cite to any specific evidence that supports his contention. This fact alone could constitute substantial evidence supporting a denial of benefits. Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

Thus, the ALJ did not err by finding Dr. Debiec's opinion to be "less than persuasive" with regard to Manzanares's ability to work before the DLI.

### 2. Manzanares's Testimony

Manzanares argues that the ALJ improperly evaluated his testimony at the hearing regarding "his symptoms and resulting limitations, his limited activities of daily living, and his lack of significant response to treatment . . . ." Pl. Br. at 17.

It is the ALJ's role to evaluate a claimant's credibility and to decide whether to discredit a claimant's subjective estimate of the degree of his impairment. Tejada, 167 F.3d at 775-76; see

also 20 C.F.R. § 404.1529(b) (dictating than an individual's subjective complaints alone do not constitute conclusive evidence of a disability). In making a credibility determination, if a claimant alleges symptoms of greater severity than established by the objective medical findings, "[t]he ALJ's decision must 'contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" Watson v. Berryhill, 732 F. App'x 48, 52 (2d Cir. 2018) (quoting SSR 96-7p, 1996 WL 374186, at *2). "[C]ourts must 'defer to an ALJ's decision to discredit subjective complaints if the decision is supported by substantial evidence.'" Dorta v. Saul, No. 19-cv-2215 (JGK)(RWL), 2020 WL 6269833, at *8 (S.D.N.Y. October 26, 2020) (quoting Watson, 732 F. App'x at 52).

      The ALJ reasoned that he discounted Manzanares's testimony because the "medical evidence of record does not support the claimant's allegations to the degree stated." R. 17. The ALJ thoroughly summarized what little medical evidence was available during the relevant period as well as evidence from after the DLI. R. 17-18. Again, despite some abnormalities found in diagnostic imaging, Manzanares received only conservative care such as physical therapy. R. 300. Notes from a January 2011 physical indicate that he reported "doing well" and only indicate current diagnoses of hypertension and hyperlipidemia. R. 290.

      At the ALJ hearing, Manzanares confirmed that during the period at issue his treatment included only physical therapy and anti-inflammatory medication. R. 42. Moreover, a large portion of his testimony about his symptoms was in the present tense. Only after repeated reminders from his own attorney did Manzanares recount his limitations before the DLI, and this testimony was vague and cursory. R. 39-47. Finally, the ALJ considered the third-party function

report completed by Manzanares's spouse, but noted that it appeared to describe only Manzanares's current symptoms, well outside the relevant period. R. 231-40, 21.

The ALJ makes abundant citations to the record that serve to make clear to Manzanares and the Court both the weight given to Manzanares's testimony and the reasons for that weight. R. 17-19; see Watson, 732 F. App'x at 52. Therefore, the ALJ's decision to discount Manzanares's hearing testimony was supported by substantial evidence and free from legal error.

## CONCLUSION

Manzanares's motion is DENIED, and the Commissioner's motion is GRANTED. The action is DISMISSED with prejudice. The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 17 and 19.

**SO ORDERED.**

SARAH NETBURN  
United States Magistrate Judge

DATED: July 5, 2023  
New York, New York